IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ERNEST M.,

      **Plaintiff,**

      v.                                                                                 **CIV No. 1:25-cv-00061-KRS**

FRANK BISIGNANO,
Commissioner of the Social Security Administration,

      **Defendant.**

**MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court upon Plaintiff Ernest M.'s ("Plaintiff") Motion for Judgment on the Pleadings ("Motion"), (Doc. 11), dated April 18, 2025, challenging the determination of the Commissioner of the Social Security Administration ("SSA" or the "Commissioner") that Plaintiff is not entitled to supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383. The Commissioner responded to Plaintiff's Motion on June 3, 2025, (Doc. 15), and Plaintiff filed a reply on June 16, 2025, (Doc. 19). Plaintiff did not file a Notice of Completion of Briefing. With the consent of the parties to conduct dispositive proceedings in this matter, *see* 28 U.S.C. § 636(c); FED. R. CIV. P. 73(b), the Court has considered the parties' filings and has meticulously reviewed the administrative record. Having done so, the Court concludes that the Administrative Law Judge ("ALJ") did not err in her decision and therefore **DENIES** Plaintiff's Motion and **AFFIRMS** the judgment of the SSA.

I.     **PROCEDURAL POSTURE**

On August 30, 2022, Plaintiff filed an initial application for SSI with an alleged onset date

of May 20, 2012. (*See* Administrative Record ("AR") at 17, 169-75).[1] Plaintiff alleged he was disabled due to bipolar, depression, antisocial personality disorder, and schizophrenia. (*Id.* at 197). In Plaintiff's May 2, 2023, Adult Function Report, he reported that his purported conditions affected his memory, completing tasks, concentration, understanding, following instructions, and getting along with others. (*Id.* at 219). He further reported that he "forget[s] things. [He] get[s] sidetracked very easily. The voices in [his] head are a constant distraction." (*Id.* at 220). Plaintiff also claimed that he does not: "pay attention well," "follow instructions well," "get along with authority." (*Id.*) He further noted that stress caused him "anxiety and panic attacks," he did not handle change well. (*Id.*at 221). Plaintiff explained that his conditions also affected his work because he was "antisocial. I have racing thoughts, panic attacks, voices in my head, and I can't function. I don't get along with people, I can't concentrate. I don't sleep or eat because I don't have any money." (*Id.* at 215). He noted he was unable to "sleep because of [his] racing thoughts" and woke up to panic attacks. (*Id.* at 216). When it came to daily activities, Plaintiff stated he needed "reminders to bathe," and he could only make peanut butter and jelly sandwiches for meals which took him 30 minutes. (*Id.* at 217). He also claimed that his form of transportation was walking, he was homeless, and he only shopped for peanut butter sandwich ingredients, but the consistency of that task depended on whether he had money and it typically took an hour to shop. (*Id.* at 215, 218). For hobbies, he stated he fished but on rare occasions when invited. (*Id.* at 219). Finally, he asserted that he "almost never" interacted with other people in person. (*Id.*)

Plaintiff's application was denied at the initial level on July 31, 2023, (*id.* at 53-60), and upon reconsideration on November 7, 2023, (*id.* at 63-73, 74-86, 100-03). Plaintiff requested a

---

[1] Document 10 is the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

hearing on December 15, 2023, (*id.* at 108-10), which ALJ Erin Justice ("ALJ Justice" or the "ALJ") conducted on August 27, 2024, (*id.* at 14-33, 34-54, 124-28). Plaintiff was represented by counsel and testified at the hearing (*id.* at 34, 38-47), as did Vocational Expert Robin Pyle ("VE") (*id.* at 47-52). On September 4, 2024, the ALJ issued an unfavorable decision. (AR 14-33). On November 1, 2024, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (*Id.* 1–3). On January 22, 2025, Plaintiff filed his Complaint in this case seeking review of the Commissioner's decision. (Doc. 1).

## II.    LEGAL STANDARDS

### A.    Standard of Review

Judicial review of the Commissioner's decision is limited to determining "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) (citing *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)); *see also* 42 U.S.C. § 405(g). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *See, e.g.*, *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Although a court must meticulously review the entire record, it "may neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]." *See, e.g.*, *id.* (quotation omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted); *Langley*, 373 F.3d at 1118 (quotation omitted). Although this threshold is "not high," evidence is not substantial if it is "a mere scintilla," *Biestek*, 139 S. Ct. at 1154 (quotation omitted); "if it is overwhelmed by other evidence in the record[,]" *Langley*, 373 F.3d at 1118 (quotation

omitted); or if it "constitutes mere conclusion[,]" *Grogan v. Barnhart*, 399 F.3d 1257, 1261–62 (10th Cir. 2005) (quotation omitted). Thus, the Court must examine the record as a whole, "including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." (*Id.* at 1262 (citation omitted)). While an ALJ need not discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence," *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996) (citation omitted), and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." (*Id.* at 1010 (quotation omitted)). "Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quotation and citation omitted).

### B.      Disability Framework

"Disability," as defined by the Social Security Act, is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The SSA devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *Wall v. Astrue*, 561 F.3d 1048, 1051–52 (10th Cir. 2009); 20 C.F.R. § 404.1520. If a finding of disability or non-disability is directed at any point, the Commissioner will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24; 20 C.F.R. § 404.1520(a)(4).

At the first four steps of the analysis, the claimant has the burden to show: (1) she is not engaged in "substantial gainful activity"; (2) she has "a severe medically determinable physical or mental impairment . . . or a combination of impairments" that has lasted or is expected to last for

4

at least one year; and that either (3) her impairment(s) meets or equals one of the "Listings" of presumptively disabling impairments; or (4) she is unable to perform her "past relevant work." *Id.* § 404.1520(a)(4)(i–iv) (citing *id.* § 404.1509); *Grogan*, 399 F.3d at 1261.

Particular to steps two and three of the sequential evaluation process, an ALJ must rate the degree of limitation resulting from medically determinable mental impairments in four broad functional areas, known as the "paragraph B" criteria: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *See* 20 C.F.R. § 404.1520a(c)(3); 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.00E. These criteria are "not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." The ALJ must rate the claimant's degree of limitation in each area on a five-point scale: none, mild, moderate, marked, or extreme. *See* 20 C.F.R. § 404.1520a(c)(4); 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.00F2. At step two, a mental impairment is not severe if it results in no more than mild limitations in these areas. *See* 20 C.F.R. § 404.1520a(d)(1). At step three, to meet the requirements of "paragraph B" of the mental disorder listings, the claimant must have "extreme limitation of one, or marked limitation of two, paragraph B areas." 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.00F2.

Step four of this analysis consists of three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ determines the claimant's residual functional capacity ("RFC") "based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). A claimant's RFC is "the most [she] can still do despite [physical and mental] limitations." *Id*. § 404.1545(a)(1). In assessing RFC, the ALJ considers "the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause

physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8p, 1996 SSR LEXIS 5, at *5. A finding of limitation under the paragraph B criteria at steps two and three "does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment." *Bales v. Colvin*, 576 F. App'x 792, 798 (10th Cir. 2014) (addressing a finding of moderate limitation at step three). But "a conclusion that the claimant's mental impairments are non-severe at step two does not permit the ALJ simply to disregard those impairments when assessing a claimant's RFC and making conclusions at steps four and five." *Wells v. Colvin*, 727 F.3d 1061, 1068-69 (10th Cir. 2013). In determining RFC, an ALJ "must consider the combined effect of all medically determinable impairments, whether severe or not." *Id.* at 1069 (emphasis omitted) (citing 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2)). And "[t]he mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings." *Id.* (quoting SSR 96-8p, 1996 SSR LEXIS 5, at *13).

An ALJ must also assess the persuasiveness of medical opinions and prior administrative medical findings in determining a claimant's RFC. 20 C.F.R. § 404.1520c. "If the RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted." SSR 96-8p, 1996 SSR LEXIS 5, at *20. The failure to explain the omission of limitations from medical opinions which the ALJ finds persuasive constitutes legal error requiring reversal. *See Parker v. Comm'r*, 922 F.3d 1169, 1172-73 (10th Cir. 2019).

The ALJ must also "determine the physical and mental demands of the claimant's past relevant work." *Winfrey*, 92 F.3d at 1023. "To make the necessary findings, the ALJ must obtain adequate 'factual information about those work demands which have a bearing on the medically

established limitations.'" *Id.* at 1024 (quoting Social Security Ruling (SSR) 82-62, 1982 WL 31386, at *3 (Jan. 1, 1982)). The ALJ then concludes whether, in light of the RFC, the claimant is capable of meeting those demands. *Id.* at 1023, 1025.

The claimant must prove that, based on his RFC, he is unable to perform the work he has done in the past. *See Thomas*, 540 U.S. at 25. If the claimant meets "the burden of establishing a *prima facie* case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that" the claimant retains sufficient RFC "to perform work in the national economy, given his age, education and work experience." *Grogan*, 399 F.3d at 1261 (citation omitted); *see also Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

## III.   THE ALJ'S DETERMINATION

On September 4, 2024, ALJ Justice issued a decision denying Plaintiff's application for SSI. (AR 14-33). In denying Plaintiff's application, the ALJ applied the five-step sequential analysis. (*Id.* at 19-26). First, ALJ Justice found that Plaintiff had not engaged in substantial gainful activity since August 30, 2022, the date of his application. (*Id.* at 19).

At step two of the sequential evaluation, the ALJ found Plaintiff had a moderate limitation in three of the four "paragraph B" areas: understanding, remembering or applying information; concentrating, persisting or maintaining pace; and adapting or managing oneself. (AR at 20-21). With regard to understanding, remembering, or applying information, ALJ Justice acknowledged Plaintiff testified to memory deficits and being disorganized. (*Id.* at 20). However, Plaintiff was able to communicate information to treating providers, consultative examiners, and at the hearing. (*Id.*) The ALJ noted that, on his function report, he stated he kept a calendar to track appointments, he prepared "simple meals, shop for groceries, and is able to manage his own income." (*Id.*) She

7

also stated that Plaintiff played chess, went fishing, read, and worked on motors. (*Id.*) And, when seeking mental treatment, he was found to be "oriented and alert, with logical though processes, fair memory, fair insight and judgment, and no delusions or hallucinations." (*Id.*)

As for concentrating, persisting, or maintain pace, the ALJ likewise relied upon Plaintiff's function report, finding that he could "prepare simple meals, wash laundry and dishes, make his bed, shop for groceries, and can perform all self-care tasks independently . . . manage his income" and enjoy the hobbies previously noted. (*Id.* at 21). She also found that the consultative examiner did not observe any concentration issues as Plaintiff did not appear to be manic or suffering from cognitive disorganization during the examination. (*Id.*)

With respect to adapting or managing oneself, ALJ Justice determined Plaintiff was unable to identify his triggers and did not have healthy coping skills based on an April 2023 inpatient treatment report. (*Id.*) And, even though he was homeless and living on the streets, he was able to walk, read, watch people, sit in the shade, prepare simple meals, wash his laundry and dishes, make his bed, perform self-care tasks independently, shop for groceries, and manage his income and pay his bills. (*Id.*)

In interacting with others, the ALJ found a marked limitation. ALJ Justice specifically noted that Plaintiff's function report and medical records demonstrated that he struggled to function around people, stand in line, answer questions, and he rarely socialized with friends. (*Id.* at 20). However, Plaintiff stated conversations with people decreased his auditory hallucinations. (*Id.*)

Accordingly, ALJ Justice found Plaintiff suffered from "the following severe impairments: bipolar with psychotic features, anxiety, personality disorders, PTSD (post-traumatic stress disorder)." (*Id.* at 19) She also concluded Plaintiff had a non-severe impairment: neurocognitive

disorder. (*Id.*) As a result, ALJ Justice stated that the paragraph B criteria was not satisfied because Plaintiff's mental impairments did "not cause at least two 'marked' limitations or one 'extreme' limitation." (*Id.* at 21). The ALJ also acknowledged "[t]he limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment," and noted "[t]he mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment." (*Id.* at 22). The ALJ also stated: "The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." (*Id.*)

In the portion of the decision addressing the RFC, the ALJ discussed Plaintiff's mental impairments in her evaluation of medical opinions and prior administrative medical findings. First, the ALJ considered the medical opinion of the psychological consultative examiner, Alicia Gauthier, Psy.D., ("Dr. Gauthier"). (*Id.* at 24). Dr. Gauthier opined that Plaintiff would have mild to moderate limitations in the ability to understand, remember, and carry out simple instructions and marked limitations in his ability to interact with others. (*Id.*) ALJ Justice found this persuasive because it was consistent with the overall record including Plaintiff's history of bipolar disorder and interacting with people. (*Id.*) In her assessment, however, the ALJ stated Plaintiff's daily activities were inconsistent with "more than a moderate limitation in his abilities to understand, remember, or apply information, concentrate, persist, or maintain pace, and adapt or manage oneself." (*Id.*) ALJ Justice also noted that Plaintiff did not demonstrate severe cognitive limitations during the consultative examination and he successfully performed serial sevens. (*Id.*)

Next, the ALJ considered the opinions of the state agency psychological consultants' prior administrative findings. (*Id.*) She noted their conclusion of Plaintiff's "lack of treatment and intact activities of daily living." (*Id.*) But, she found the overall record supported a marked limitation in

Plaintiff's ability to interact with others and a moderate limitation in the ability to understand, remember, or apply information, concentrate, persist, or maintain pace, and adapt or manage oneself." (*Id.*)

ALJ Justice concluded her RFC analysis with the following statement:

> The residual functional capacity is supported by the overall medical evidence of record including the treatment records and history of mental health diagnoses and treatment, observations by medical providers or consultative examiners of anxiety, delusions, or hallucinations, and some of the claimant's subjective symptoms regarding social isolation and the inability to function around others.

(*Id.* at 25). Nevertheless, she continued to explain her RFC assessment by detailing Plaintiff's lack of medical treatment, his prescription management was inconsistent with his purported severity of his symptoms, and his ability to seek treatment when needed. (*Id.*) On one occasion, Plaintiff was "observed to be engaged, cooperative, alert, oriented, and to have intact judgment and cognitive abilities" despite not consistently taking medications or seeking treatment. (*Id.*) ALJ Justice further discussed Plaintiff's daily activities and specifically explained:

> The claimant has stated that he is homeless and lives on the streets or sometimes stays with friends. On a typical day, he walks, reads, people watches, or sits in the shade. He can perform simple meals, wash laundry and dishes, make his bed, shop for groceries, and can perform all self-care tasks independently (2F). He is able to manage his own income and uses a calendar to track his own appointments (2F; 4E). The claimant also enjoys hobbies including going fishing with others, playing chess, and working on motors (2F; 4E). He recently spent a month fishing on the beach in Mexico with others (hearing testimony). These activities of daily living and hobbies all demonstrate greater mental abilities as well as greater socialization than alleged and this evidence suggests that the claimant retains the residual function capacity for some work with the limitations described above.

(*Id.*)

Having reviewed the evidence of record, including medical opinions and evidence from treating and consulting providers, prior administrative medical findings, and Plaintiff's own subjective symptom evidence, the ALJ concluded that for the relevant period, Plaintiff possessed

10

an RFC:

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant can understand, remember, and perform simple work. The claimant can have occasional interaction with coworkers and supervisors and can have no interaction with the general public. The claimant cannot perform strict production pace work such as assembly line work. The claimant can tolerate occasional changes in the workplace.

(*Id.* at 22).

Next, the ALJ found Plaintiff did not have past relevant work. (*Id.* at 25). At step five, the ALJ asked the VE if any occupations exist which could be performed by an individual with the same "age, education, work experience, and [RFC]" as Plaintiff. (*Id.* at 26). The VE testified that, considering those factors, an individual could perform the requirements of industrial cleaner, kitchen helper, or laundry worker. (*Id.*) The ALJ then determined that there are other jobs that exist in significant numbers in the national economy that Plaintiff could perform. (*Id.*) Accordingly, Plaintiff was deemed not disabled at any time since he filed his SSI application on August 30, 2022. (*Id.*)

## IV.   DISCUSSION

Plaintiff raises two specific challenges to the ALJ's RFC determination. First, although the ALJ found persuasive Dr. Gauthier's opinion that Plaintiff had a moderate limitation in understanding, remembering, and carrying out simple instructions, the RFC does not contain a limitation which corresponds to this moderate mental impairment. (Doc. 11 at 10-13). Second, Plaintiff contends the ALJ failed to adequately explain the absence of such a corresponding RFC limitation, as she was obligated to do. (*Id.*) The Commissioner asserts first that Plaintiff's bright line rule that a judge must either include in the RFC a moderate limitation if the judge found the medical opinion and limitation persuasive in step three or explain its omission in the RFC assessment incorrectly states current precedent. Second, substantial evidence supports the ALJ's

11

RFC determination. (Doc. 15 at 8-9). In reply, Plaintiff argues that substantial evidence does not support the ALJ's assessment because Plaintiff's daily activities were more limited than as characterized by the ALJ. (Doc. 16 at 2-4).

### A.    The RFC Assessment Includes Moderate Limitations

"As recognized by both the Social Security regulations and Tenth Circuit case law, a claimant's functional ability is distinct from the skill level required to perform a particular job." *Chapo v. Astrue*, 682 F.3d 1285, 1290 n.3 (10th Cir. 2012) (fact that jobs were classified as unskilled "accounted for issues of skill transfer, not impairment of mental functions—which are not skills but, rather, general prerequisites for most work at any skill level"); SSR 85-15, 1985 SSR LEXIS 20 at *16, 1985 WL 56857, at *6 ("Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job.").

The Tenth Circuit has "generally held that restricting a claimant to particular work activities does not adequately account for the claimant's mental limitations." *Parker*, 922 F.3d at 1172 (citing *Chapo*, 682 F.3d at 1290 n.3). However, the ALJ "can sometimes account for mental limitations by limiting the claimant to particular kinds of work." *Id.* (citing *Vigil v. Colvin*, 805 F.3d 1199, 1203-04 (10th Cir. 2015)); *see also Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016) ("an administrative law judge can account for moderate limitations by limiting the claimant to particular kinds of work activity"); *Berumen v. Colvin*, 640 F. App'x 763, 766 (10th Cir. 2016); *Lager v. Comm'r*, No. 22-4116, 2023 U.S. App. LEXIS 25630, 2023 WL 6307490, at *2 (10th Cir. Sept. 28, 2023). A "restriction to unskilled work can account for a mental impairment in an appropriate case, for example, when the relationship between skill level and mental capacity is

obvious . . . or when an ALJ credits a medical-source opinion that a claimant's [mental] deficit does not affect the ability to do unskilled work." *Evans v. Colvin*, 640 F. App'x 731, 738 (10th Cir. 2016). "The ALJ's finding of moderate limitations at step three 'does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment.'" *Patterson v. Colvin*, 662 F. App'x 634, 638 (10th Cir. 2016) (quoting *Vigil*, 805 F.3d at 1203). Rather, a fact specific analysis is required to determine whether the RFC's limitations adequately account for all impairments found by the ALJ and are substantially supported by the record. *See generally Smith*, 821 F.3d 1264; *Vigil*, 805 F.3d 1199; *Chapo*, 682 F.3d 1285.

In *Vigil*, the Tenth Circuit held that an RFC limitation to "unskilled work" adequately accounted for the claimant's moderate limitations in concentration, persistence, and pace because the ALJ found that the claimant had "normal thought processes" as well as "a normal ability to recall items on immediate recall, and an ability to spell words forward," which "indicated that [the claimant] retained enough memory and concentration to perform at least simple tasks." *Vigil*, 805 F.3d at 1203-04 (internal alterations and citation omitted).

In this case, the ALJ found, at step three, that Plaintiff had moderate limitations in three of the four "paragraph B" criteria: understanding, remembering or applying information; concentrating, persisting or maintaining pace; and adapting or managing oneself.[2] (AR at 20-21). Plaintiff's RFC includes the following limitation: "claimant can understand, remember, and perform simple work. . . . have occasional interaction with coworkers and supervisors and can have no interaction with the general public. . . . cannot perform strict production pace work such as assembly line work. . . . can tolerate occasional changes in the workplace." (*Id.* at 22). ALJ Justice found Dr. Gauthier's opinion persuasive, but she also determined that substantial medical evidence

---

[2] Notably, Plaintiff only disputes the ALJ's limitations as to understanding, remembering, or applying information (*i.e.*, carrying out simple instructions). *See* (Doc. 11 at 10-14).

disputed the severity of Plaintiff's symptoms. The limited medical record—due to Plaintiff's intermittent treatment—established that the medical providers generally found Plaintiff to be alert, calm, cooperative, thought process was logical and coherent, stream of thought was unremarkable, speech was normal, fair judgment and insight, and Plaintiff did not report any delusions or hallucinations. (AR at 23 (citing 1F; 7F); *id.* at 24-25). Plaintiff was also "able to read and understand information in simple documents and locate easily identifiable numerical information and use it to solve simple, mathematic one-step problems." (*Id.* at 23 (citing 7F)). She also noted that Plaintiff contradicted himself in telling medical providers that his medications "helped" but at other times stated they caused his suicidal ideation. (*Id.* at 23). Plaintiff was also noncompliant with treatment and prescription medication—when he did and did not have suicidal tendencies. (*Id.* (citing 1F, 2F, 7F)). As for Dr. Gauthier's evaluation, the ALJ noted Plaintiff was "cooperative, friendly, and pleasant and able to make eye contact." (*Id.* at 23 (citing 2F)). Plaintiff's thought processes and speech were "normal, clear, concise, and logical." (*Id.*) Plaintiff "was able to remember three items immediately and three items after five minutes. He was able to correctly complete serial sevens and threes. . . . [and] spell[ed] Denver forward and backward correctly." (AR at 23). On the other hand, Plaintiff was "suspicious, hypervigilant, anxious, and easily on the defense." (*Id.* at 24).

The Court finds that the ALJ's limitation to "simple work" sufficiently accounts for Plaintiff's moderate limitation in understanding, remembering, and applying information. This RFC effectively limited Plaintiff to unskilled work, which does not require the ability to understand, remember, or carry out detailed instructions. *See Lager*, 2023 WL 6307490, at *2 n.1 (stating that "simple" and "unskilled" work or tasks are essentially equivalent);[3] *see e.g., Nelson*

---

[3] "Unskilled work generally requires only the following: (1) '[u]nderstanding, remembering, and carrying out simple instructions'; (2) '[m]aking judgments that are commensurate with the functions of unskilled work—*i.e.*, simple work-

*v. Colvin*, 655 F. App'x 626, 629 (10th Cir. 2016) (citing SSR 96-9p, 1996 SSR LEXIS 6, *9, 1996 WL 374185, at *9). Similar to *Vigil*, ALJ Justice specifically referenced Plaintiff's normal thought processes that were present in three separate medical evaluations. She further explained how Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were inconsistent with the overall medical record and his daily activities. (AR at 24-25). In particular, she noted how the medical record and daily activities supported limitations of "simple work." For example, "without medication compliance" medical providers found Plaintiff to be "engaged, cooperative, alert, oriented, and to have intact judgment and cognitive abilities." (AR at 25 (citing 1F)). Likewise, Plaintiff's function report, Dr. Gauthier's assessment, and Plaintiff's hearing testimony evidenced "greater mental abilities" and "greater socialization" than alleged by Plaintiff. (*Id.*) For instance, Plaintiff stated he liked to read, interact with people to find one-off jobs, tracked his own appointments in a calendar, and he spent a month fishing in Mexico after being invited by two friends. (*Id.* (citing 2F; 4E)).

The restriction of "simple work" in this case was appropriate because "the relationship between [the] skill level and" Plaintiff's mental capacity is obvious based on substantial evidence in the record. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) ("Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal."). This conclusion is supported by case law. In *Haga*, the Tenth Circuit found that RFC restrictions to "simple, repetitive tasks" and "no requirement for making change" sufficiently accounted for limitations in understanding, remembering, and carrying out detailed

---

related decisions'; (3) '[r]esponding appropriately to supervision, co-workers and usual work situations'; and (4) '[d]ealing with changes in a routine work setting.'" *Vigil*, 805 F.3d at 1204 (quoting SSR 96-9p, 1996 SSR LEXIS 6, 1996 WL 374185, at *9 (July 2, 1996)).

instructions. *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007). In *Nelson*, a restriction to unskilled work accounted for the same. *Nelson*, 655 F. App'x at 628-29. The Court therefore finds that the ALJ both discussed and clearly incorporated Plaintiff's moderate limitations with respect to understanding, remembering, and carrying out simple instructions. *See also Evans*, 640 F. App'x at 738 (a limitation to unskilled work can account for even moderate limitations in mental functions); *L.H. v. Bisignano*, No. 25-1052-JWB, 2025 LX 420537 (D. Kan. Oct. 20, 2025) (finding ALJ's RFC assessment limiting to "simple . . . instructions in jobs with no more than occasional changes in work settings reflected the plaintiff's limitations); *Gutierrez v. Kijakazi*, No. 20-552 KK, 2021 U.S. Dist. LEXIS 194833, at 10-11 (D.N.M. Oct. 8, 2021) (finding RFC determination accounted for moderate limitations in understanding, remembering, and carrying out detailed instructions even though the ALJ could have been "more explicit" in the findings); *Garcia v. Colvin*, No. 14-cv-02914-NYW, 2016 U.S. Dist. LEXIS 33284, 2016 WL 1028297, at *6-7 (D. Colo. Mar. 15, 2016) (holding that ALJ's limitation to "unskilled work" sufficiently accounted for claimant's moderate limitations in the ability to understand, remember, and carry out detailed instructions). Plaintiff fails to identify any additional limitations that the ALJ should have adopted based on the record. Rather, he surmises that a moderate limitation in understanding, reading, and carrying out simple instructions could have rendered him disabled. (Doc. 11 at 10-14). That is a leap this Court may not make. Accordingly, the Court finds that the ALJ applied the correct legal standard and the ALJ's decision was supported by substantial evidence. The Court therefore rejects Plaintiff's second argument.

**B.    The ALJ's Assessment of Plaintiff's Daily Activities Does Not Warrant Remand**

In his reply, Plaintiff contends *Wells v. Colvin*, 727 F.3d 1061 (10th Cir. 2013), supports

remand because the ALJ failed to consider more nuanced aspects of his reported activities.[4] (Doc. 16 at 2-4). Specifically, Plaintiff's function report and testimony evidence that his "simple meals" consisted of "peanut butter and jelly sandwiches," that it takes him "about an hour" to shop for sandwich ingredients because he waits until the convenience store is empty in order to avoid people and standing in lines, and that he cannot manage his own finances because he is homeless. (*Id.* at 3-4). In *Wells*, 727 F.3d at 1069-71, the Tenth Circuit determined that the ALJ relied upon statements or assessments made prior to the alleged onset date, statements regarding the claimant's activities which "were much more nuanced" than acknowledged by the ALJ, and part-time or short-time work experience that did not demonstrate an ability for full-time work.[5] For the following reasons, the Court concludes that the degree of deficiency in *Wells* is not mirrored in the instant case.

Here, ALJ Justice discussed Plaintiff's reports of social avoidance, auditory and visual hallucinations, panic attacks, paranoia, racing thoughts, manic depression, low energy and motivation, irritability, racing thoughts, impaired memory, difficulty communicating, and disorganization associated with mood elevation. (AR at 23). She concluded, however, that Plaintiff's symptoms were inconsistent with other evidence.[6] (AR at 23-24). As to daily activities,

---

[4] Plaintiff's opening brief fails to address this contention. It is well-established that a plaintiff cannot use a reply brief to cure a failure to make a developed-opening brief argument. *Kruse v. Astrue*, 436 Fed. App'x 879, 885 (10th Cir. 2011) ("[a]rguments presented for the first time in a reply brief are waived" (citing *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 984 n.7 (10th Cir. 1994))); *Berna v. Chater*, 101 F.3d 631, 632-33 (10th Cir. 1996) (recognizing "that waiver principles developed in other litigation contexts are equally applicable to social security cases"). Notwithstanding, the Tenth Circuit also recognizes that when the appellee raises an argument not addressed in the opening brief, the appellant may respond in reply. *Sadeghi v. INS*, 40 F.3d 1139, 1143 (10th Cir. 1994). Here, Plaintiff's opening brief argued, in substance, that the ALJ erred in translating the mental evidence into the RFC. Accordingly, the Court finds Plaintiff's contention is a permissible rebuttal to the Commissioner's reliance on *Wells*.
[5] This was the basis for the Court's reversing the denial of benefits in *Wells*. The Court noted that the ALJ's discussion of the claimant's mental impairments "might have satisfied the ALJ's obligation at step four," but the ALJ's conclusions were not supported by substantial evidence. 727 F.3d at 1069.
[6] Plaintiff has not challenged on appeal the ALJ's conclusions as to the objective medical evidence. *See Keyes-Zachary*, 695 F.3d at 1161 ("We will consider and discuss only those of [plaintiff's] contentions that have been adequately briefed for our review.").

ALJ Justice noted Plaintiff was homeless, but sometimes lived with friends. (*Id.* at 25). The ALJ also looked at Dr. Gauthier's examination findings, which stated Plaintiff could "prepare simple meals, wash laundry and dishes, make his bed, [] shop for groceries . . . and perform all self-care tasks independently." (*Id.*); *see also* (AR at 316). Plaintiff's function report and Dr. Gauthier's assessment noted Plaintiff enjoyed fishing with other people, playing chess, and working on motors. (*Id.* at 25). At his hearing, Plaintiff testified that he spent a month fishing in Mexico with friends. (*Id.*) In regard to managing his own finances, Plaintiff's function report states that he is able to pay bills, count change, handle a savings account, and use a checkbook/money orders. (AR at 218). Admittedly, Plaintiff's activities pertaining to preparing meals and grocery shopping are "more nuanced" than ALJ Justice suggests.

However, the Court does not conclude, as Plaintiff proposes, that the ALJ's mischaracterization of Plaintiff's daily activities constitutes reversible error. *But cf. Sitsler v. Astrue*, 410 F. App'x 112, 117 (10th Cir. 2011) ("We have criticized this form of selective and misleading evidentiary review, holding that an ALJ cannot use mischaracterizations of a claimant's activities to discredit his claims of disabling limitations."). In contrast to *Wells*, substantial evidence supports the ALJ's RFC analysis in this case. Notably, ALJ Justice focused largely on the objective medical evidence that supported her assessment and credibility determination. *See Hardman v. Barnhart*, 362 F.3d 676, 678-79 (10th Cir. 2004) (noting that an ALJ's credibility finding should be closely and affirmatively linked to substantial evidence in the record). ALJ Justice discussed, at length, Dr. Gauthier's examination findings and opinion, the State agency psychological consultants' prior administrative medical findings, Plaintiff's limited medical evidence, his testimony, and function report. Therefore, the Court concludes that any error in mischaracterizing Plaintiff's daily activities is harmless, as substantial evidence supports the ALJ's

18

RFC assessment and credibility determination. *See Wall*, 561 F.3d at 1070 (upholding the ALJ's credibility determination because it was linked to substantial evidence; noting "[o]ur precedents do not require more").

## C.    Hypothetical Question Was Proper

Finally, Plaintiff argues that the ALJ's hypothetical question to the VE at step five was not supported by substantial evidence and, thus, the error was harmful. (Doc. 11 at 13-14). At the hearing, the ALJ asked the VE the following question:

> [a]ssume an individual of [Plaintiff's] age, education, and past work who can understand, remember, and perform simple work; can have occasional interaction with co-workers and supervisors, and no interaction with the general public; cannot perform strict production-paced work such as assembly-line work; and can tolerate occasional changes in the workplace. Would there be any jobs in the national economy that this individual could perform on a full-time competitive basis?

(AR at 48-49). Plaintiff asserts that this question was not supported by substantial evidence, and thus renders the error harmful, because the ALJ did not include "mild to moderate limitations in the ability to understand, remember, and carry out simple instructions . . . which could have led the [VE] to testify that the Plaintiff was unemployable and, therefore, eligible for disability benefits." (Doc. 11 at 13).

"Because we have already concluded that the ALJ was not required to include any of those limitations in [the] RFC finding . . . the ALJ's hypothetical to the [VE] was not flawed." *Fulton v. Colvin*, 631 F. App'x 498, 508 (10th Cir. 2015) (unpublished); *see also Smith*, 821 F.3d at 1270 (discussing how, in a hypothetical question to the VE, the ALJ "had to ask only about the effect of those limitations ultimately assessed; the judge did not need to ask about the effect of limitations that he didn't believe applied"). Accordingly, the Court rejects Plaintiff's final argument.

## V.    CONCLUSION

For the reasons set forth above, the Court **DENIES** Plaintiff's Motion for Judgment on the

19

Pleadings (Doc. 11) and **AFFIRMS** the Commissioner's decision.

_____

**KEVIN R. SWEAZEA**
**UNITED STATES MAGISTRATE JUDGE**

20